MRS. SARAH M. ALFORD, WIDOW; MICHAEL ALFORD, PATRICIA ALFORD AND VIRGINIA ALFORD, MINOR CHILDREN; MAYARD S. ALFORD, DECEASED, v. QUALITY CHEVROLET COMPANY AND LUMBERMEN'S MUTUAL CASUALTY COMPANY.

(Filed 8 May, 1957.)

**1. Master and Servant § 55d—**

Whether an accident grew out of the employment within the purview of the Workmen's Compensation Act is a mixed question of law and fact, which the court has the right to review on appeal, and when the detailed findings of fact force a conclusion opposite that reached by the Commission, it is the duty of the court to reverse the Commission.

**2. Master and Servant § 40c—**

Findings to the effect that the deceased employee was furnished a car for transportation to and from his work, that he quit work about 7:00 p.m., met a friend for dinner, took repeated drinks throughout the evening, made several trips, on one of which he drove approximately 100 miles per hour, in search of a girl to join the party, and some five hours thereafter started for home in the employer's car, and was killed in a wreck occurring on the direct route from the employer's place of business to the employee's home, *held* to show an abandonment of employment rather than a deviation from it, and therefore the accident did not arise in the course of the employment.

APPEAL by plaintiff from *Craven, S. J.,* October, 1956 Special Term, UNION Superior Court.

This action originated before the North Carolina Industrial Commission upon a claim for death benefits under the Workmen's Compensation Act. The deputy commissioner, after hearing and appropriate findings, denied the claim. On application for review the full commis-

sion made its own findings, reversed the order of the deputy commissioner, and awarded compensation.

The deceased employee, Mayard S. Alford, lived in Hamlet. He had been employed for about six weeks at Quality Chevrolet Company in Monroe. His work hours were from 7:30 a.m. to 7:00 p.m. The employer furnished an automobile for his daily use in commuting between his home in Hamlet and his work in Monroe.

On 25 February, 1955, after the day's work, Alford and Mills (a fellow employee) met about 7:15 for a steak dinner at the Royal Cafe in Monroe. While waiting for the dinner the men took several drinks of whisky. At about 9:30 the two men and a waitress from the grill went in search of another girl to complete the party. They traveled in Mills' car. He did the driving. Being unable to find a companion for Alford, they returned to Monroe where Alford took from his employer's lot a 1953 Oldsmobile which he drove to the Cotton Patch Grill in Marshville (about 12 miles from Monroe). Mills and the waitress followed in Mills' car. While at Marshville they each took one or two drinks.

The foregoing is a summary of the commission's findings of fact Nos. 1 to 11, inclusive. The commission made these further findings:

"12. That deceased employee, Mills, and Starnes then proceeded in the Oldsmobile to the house of a friend of Starnes, about five miles south of Marshville, for the purpose of securing a companion for the deceased employee; that the deceased employee was driving the Oldsmobile and reached a speed of approximately one hundred miles per hour on a four-mile stretch of road; that there was nothing unusual about the driving of the deceased except his excessive speed.

"13. That no additional person joined the party and they returned to the Cotton Patch Grill arriving about 11:45 p.m., where the deceased employee took one more drink of whiskey.

"14. That Mills, accompanied by Starnes, left the Cotton Patch Grill in Mills' Chevrolet and did not see the deceased employee alive again.

"15. That the deceased employee left the Cotton Patch Grill in the Oldsmobile between 11:45 p.m. and 12 midnight.

"16. That at 12:30 a.m., on February 26, 1955, Gilbert M. Cameron, a State Highway Patrolman stationed in Rockingham was called to an automobile accident five miles west of Rockingham on U. S. Highway 74 and approximately 35 miles east of the Cotton Patch Grill in Marshville; that the site of the accident was on the most direct route from the employer's premises to the home of the de-

ceased; that Cameron arrived at the scene of the accident at 12:40 a.m. and found a 1953 Oldsmobile in a field on the south side of the highway; that deceased employee was dead and his body was still warm; that the body of the deceased employee was about forty feet from the Oldsmobile; that the weather was clear and the road was dry and straight; that Cameron observed fifteen foot skid marks on the south portion of said highway; that said marks ran sharply to the south side of the road; that the cause of the accident has not been determined.

"19. That the deceased employee sustained an injury by accident arising out of and in the course of his employment with the defendant employer resulting in his death."

The defendants excepted to certain findings of fact and conclusions of law made by the full commission and failure of the commission to make certain requested findings, and assigned the commission's action as errors and appealed to the Superior Court of Union County. Judge Craven overruled certain of the defendants' exceptions, sustained others. Among those reversed was the finding that the employee's death was the result of an injury by accident arising out of and in the course of his employment. The court ordered the cause remanded to the Industrial Commission for denial of the claim. The plaintiffs excepted and appealed.

*Vaughan S. Winborne, Samuel P. Winborne,*
*By: Vaughan S. Winborne, for plaintiffs, appellants.*
*Carpenter & Webb,*
*By: Wm. B. Webb, for defendants, appellees.*

HIGGINS, J. A number of procedural questions are made the basis of exceptions. However, in the view this Court takes of the case it is not necessary to consider them. The decisive question is whether the specific findings made by the commission support the finding and conclusion that the deceased employee's death was the result of an injury by accident arising out of and in the course of his employment. Whether the accident grew out of the employment is a mixed question of law and fact which the court had the right to review on appeal. If the detailed findings of fact forced a conclusion opposite that reached by the commission, it was the duty of the court to reverse the commission. *Thomason v. Cab Co.,* 235 N.C. 602, 70 S.E. 2d 706.

If it be conceded the course of employment included the travel home, then certainly there must be reasonable continuity between the employment and the travel. When travel is contemplated as part of the work the rule is stated in 58 Am. Jur., p. 722, Sec. 214, as follows:

". . . the employment includes not only the actual doing of the work but also a reasonable margin of time and space necessary to be used in passing to and from the place where the work is to be done, when the latter is expressly or impliedly included in the terms of the employment." Citing *Brick Co. v. Giles,* 276 U.S. 154; *Guiliano v. Daniel O'Connell's Sons,* 105 Conn. 695. In the latter case the Court said: "The period of employment covers the working hours . . . and such reasonable time as is required to pass to and from the employer's premises."

"It has become axiomatic that under the Workmen's Compensation Act the words 'arising in the course of employment' relate to time, place and circumstances under which an accidental injury occurs. *Withers v. Black,* 230 N.C. 428, 53 S.E. 2d 668; *Wilson v. Mooresville,* 222 N.C. 283, 22 S.E. 2d 907. The converse of the rule is thus stated in *Withers v. Black:* "Manifestly, the finding that the claimant's injury arose in the course of employment was required by the evidence that it occurred during the hours of the employment and at the place of the employment while the claimant was actually engaged in the performance of the duties of the employment. *Hildebrand v. Furniture Co.,* 212 N.C. 100, 193 S.E. 294."

The commission found the employee had left the place of his employment and had spent five hours in activities which, to say the least, were totally disassociated from both his employment and his travel home. At the time of the fatal accident the employee cannot be said in any reasonable view of the facts to have been on his way home from his employment. Actually he was on his way home from a night out. All reasonable time for travel home from work had expired before he returned to Monroe from Marshville at midnight. The record shows abandonment of employment rather than deviation from it.

The facts found show that the deceased employee did not sustain an injury by accident arising out of and in the course of his employment. The judgment of the Superior Court of Union County is

Affirmed.