GOLDIE KIRK, MOTHER AND NEXT OF KIN TO ALAN PATRICK KIRK (DECEASED), EMPLOYEE, PLAINTIFF v. STATE OF NORTH CAROLINA DEPARTMENT OF CORRECTION, EMPLOYER SELF-INSURED, CARRIER, DEFENDANT

No. COA94-1170

(Filed 19 December 1995)

**1. Workers' Compensation § 149 (NCI4th)— death while driving to training class—special errand for employer—accident arising out of and in course of employment**

A corrections officer who was hired to work at Caledonia Prison but who was killed while driving from his home to a training class at Halifax Community College was on a special errand for his employer, even though he was driving his own vehicle and was not compensated for any travel expense, and his accident therefore arose out of and in the course of his employment, where he was required, as a condition of his employment, to attend the training class.

**Am Jur 2d, Workers' Compensation §§ 279, 301.**

**2. Workers' Compensation § 260 (NCI4th)— calculation of average weekly wage—exclusion of employer's contribution to health insurance—no error**

In an action to recover death benefits under the Workers' Compensation Act, the Industrial Commission did not err in failing to include the amount paid by the employer, the State, for the employee's health insurance in the calculation of plaintiff's average weekly wage, since the health insurance was a fringe benefit the value of which could not be quantified; furthermore, the value of the employer's contribution to health insurance was not required to be included in the calculation of weekly earnings pursuant to N.C.G.S. § 97-2(5), since there was no evidence that the State's contributions to the employee's health insurance were made "in lieu of wages."

**Am Jur 2d, Workers' Compensation §§ 418, 419.**

Appeal by defendant from the Opinion and Award filed by the N.C. Industrial Commission 19 July 1994. Heard in the Court of Appeals 18 October 1995.

*Lore & McClearen, by R. James Lore, for the plaintiff.*

*Attorney General Michael F. Easley, by Assistant Attorney General, Amy A. Barnes, for the defendant.*

WALKER, Judge.

Alan Patrick Kirk began his employment with defendant as a correctional officer on 25 March 1991. He was assigned to work at Caledonia Correctional Institute (Caledonia) in Halifax County. As a condition of his employment, Kirk was required to complete a four-week Basic Custodial Officer's Training (BCOT) course within twelve months of his hiring. These courses were offered at various sites in North Carolina.

Prior to 8 July 1991, Kirk received a letter from the Department of Correction directing him to attend BCOT at Halifax Community College, in Weldon, North Carolina, from 8 July 1991 through 2 August 1991. The letter informed Kirk that no on-site accommodations would be provided thus making it necessary to commute to the training site each day. Kirk, and his fellow trainees, were instructed that they could drive their personal automobiles to Caledonia each morning where transportation would then be provided to take them to the training site, or they could drive their own personal cars from their respective homes directly to Halifax Community College.

It was the policy of the Department of Correction that during the training period officers received only their regular salary. No mileage or other travel expense was compensated.

All trainees, including Kirk, elected to drive from their homes to the training site. On the morning of 15 July 1991, Kirk, dressed in his correctional officer uniform, left his home in Greenville, North Carolina, and began driving his car to the training site in Weldon. When Kirk was approximately three miles from the training site, he fell asleep, crossed the center line, and was struck and killed by a truck traveling south on US 301.

Plaintiff, the mother and next-of-kin of the decedent, applied for death benefits pursuant to the terms of the Workers' Compensation

KIRK v. STATE OF N.C. DEPT. OF CORRECTION

[121 N.C. App. 129 (1995)]

Act. Death benefits and funeral expenses were awarded to plaintiff by the Deputy Commissioner and the Full Commission affirmed.

On appeal from an award of the Industrial Commission, the reviewing court is limited in its inquiry to two questions: (1) whether the Commission's findings are supported by competent evidence and (2) whether the findings of fact justify the Commission's conclusion of law. *McBride v. Peony Corp.*, 84 N.C. App. 221, 225, 352 S.E.2d 236, 239 (1987). The primary issue raised on appeal is whether the Commission erred in concluding that Kirk sustained an "injury by accident arising out of and in the course of employment." N.C. Gen. Stat. § 97-2(6) (1994). The phrase "arising out of and in the course of" contains two distinct elements which must be satisfied in order to receive compensation. "The term 'arising out of' refers to the origin or cause of the accident, and the term 'in the course of' refers to the time, place, and circumstances of the accident." *Hoyle v. Isenhour Brick & Tile Co.*, 306 N.C. 248, 251, 293 S.E.2d 196, 198 (1982).When deciding whether to grant compensation under the Workers' Compensation Act, it is well established that the Act "should be liberally construed to the end that the benefits thereof should not be denied upon technical, narrow, and strict interpretation." *Hall v. Chevrolet Co.*, 263 N.C. 569, 576, 139 S.E.2d 857, 862 (1965).

[1] Defendant argues that Kirk's accident did not arise out of and in the course of his employment since the injury occurred while Kirk was traveling to his regular place of employment, Halifax Community College. Defendant contends that Kirk's regular place of employment was transferred from Caledonia to Halifax Community College during the four-week training period. As such, defendant argues that the present case is controlled by the "going and coming" rule as pronounced in *Hunt v. State*, 201 N.C. 707, 161 S.E. 203 (1931). We disagree.

As a general rule "an injury suffered by an employee while going to or coming from work is not an injury arising out of and in the course of employment." *Felton v. Hospital Guild*, 57 N.C. App. 33, 34, 291 S.E.2d 158, 159, *affirmed*, 307 N.C. 121, 296 S.E.2d 297 (1982); *Hunt v. State*, 201 N.C. 707, 161 S.E. 203 (1931). However, we find *Hunt v. State* distinguishable from the present case.

In *Hunt*, the decedent was a member of the National Guard and privately employed by a pharmacist. *Id.* Decedent received orders on 13 July to report for duty at Camp Glenn in Morehead City. Decedent left his private job in Oxford on 12 July and traveled in his own vehicle directly to Morehead City. *Id.* at 708, 161 S.E. at 203. Before arriv-

ing in Morehead City, plaintiff was involved in a fatal automobile collision. The court found that the plaintiff's death did not arise out of and in the course of his employment with the State since his injury resulted from an accident while traveling to his regular place of employment. *Id.* at 711, 161 S.E. at 205. The court in *Hunt* applied the traditional "going and coming" rule after determining that servicemen, unlike civilians, have no regular situs of employment except that which is assigned on a duty-by-duty basis.

In the present case, the "going and coming" rule is inapplicable because Kirk's accident did not occur while traveling to his regular place of employment. There was competent evidence to support the Commission's finding that Kirk's regular place of employment remained at Caledonia. The Department's own records show that Kirk was hired as a corrections officer at Caledonia. Later, when the State filed its own internal documents regarding the separation of Kirk from employment due to his death, his regular place of employment continued to be listed as Caledonia. Further, the payroll records for Kirk during his training period indicated that Kirk's base of operation was Caledonia. Finally, while the Department argues that Kirk's place of employment was transferred to Halifax Community College during his training period, no form was filed as required to effect such a transfer. In sum, where competent evidence supports the Commission's finding that Kirk's regular place of employment was Caledonia, we are bound by this finding on appeal.

The facts in the present case fit the "special errand" exception to the "going and coming" rule. Under this exception:

Employees whose work entails travel away from the employer's premises are held in the majority of jurisdiction[s] to be within the course of their employment continuously during the trip, except when a distinct [departure] on a personal errand is shown.

1 *A. Larson, Workmen's Compensation Law*, § 25.00 (1995). "When it is established that an employee is on a special errand for her employer, the declared policy of the state requires a liberal construction in favor of the employee." *Felton* at 35, 291 S.E.2d at 160. Our Supreme Court applied the special errand exception in the case of *Jones v. Trust Co.*, 206 N.C. 214, 173 S.E. 595 (1934). In *Jones*, the cashier of a bank was requested by his superior officer to attend a meeting of the cotton committee in another city for the purpose of procuring financial information for the use of the bank. *Id.* at 216, 173 S.E. at 596. En route to the meeting the cashier was injured in an auto-

KIRK v. STATE OF N.C. DEPT. OF CORRECTION

[121 N.C. App. 129 (1995)]

mobile accident. *Id.* The court found such evidence was sufficient to support the Commission's findings that the accident arose out of and in the course of plaintiff's employment. *Id.* at 219, 173 S.E. at 598.

In the present case, Kirk was required, as a condition of his employment, to attend a four-week training seminar which was not offered at Caledonia but instead was held at Halifax Community College. Therefore, Kirk was on a special errand to attend a training course at the direction of and for the benefit of his employer.

Defendant argues that the special errand exception is inapplicable to the present case since defendant was not being compensated for mileage or other travel-related expense. This argument has been specifically rejected by this Court, *McBride v. Peony Corp.*, 84 N.C. App. 221, 352 S.E.2d 236 (1987), where the plaintiff injured her ankle while walking down a hill with her employment supervisor to look at a trailer. Although the plaintiff was not being paid during this period of time, this Court held that the injury arose out of and in the course of employment noting that plaintiff was on a "special errand" of "substantial benefit to the employer" for the purpose of cementing the relationship of all who worked at the Company. *Id.* at 225, 352 S.E.2d at 239.

In *Warren v. City of Wilmington*, 43 N.C. App. 748, 749, 259 S.E.2d 786, 787 (1979), the plaintiff was injured while traveling from a meeting to her home to write a report. Plaintiff furnished her own vehicle and did not receive a mileage allowance. *Id.* This Court held:

> Here, however, plaintiff's job required her to travel from her place of work to various places about the community. The job exposed her to the risk of travel. She was required to work nights and holidays.
>
> . . .
>
> Going to and from the meetings was a part of plaintiff's job duties for which she was paid the same as when actually in the office or at community meetings. There is no suggestion that plaintiff was on a personal errand when the accident occurred. Plaintiff's accident on a city street as she was returning home to write a report about the meeting she had just attended was an accident in the course of her employment.

*Id.* at 750-751, 259 S.E.2d at 788 (citation omitted).

Thus, according to *McBride* and *Warren*, plaintiff was not precluded from recovery under the "special errand" rule because Kirk was driving his own vehicle and was not compensated for any travel expense.

Defendant admits that as a general rule an employee injured or killed by accident while traveling to and from an educational or training course as directed by the State as a condition of continued employment is covered by the provisions of the Workers' Compensation Act. However, defendant contends that the general rule is inapplicable in this case because the BCOT was not designed to improve already existing skills but to provide trainees with the basic job skills necessary to be a correctional officer. We can find no authority which makes such a distinction. Accordingly, we hold that the Commission's findings are based on competent evidence and that such evidence supports the conclusion that Kirk's accident arose out of and in the course of his employment.

## II.

Plaintiff argues that the trial court erred in not ordering defendant to pay attorney fees. The test to determine whether attorney fees should be awarded is "not whether the defense prevails, but whether it is based in reason rather than in stubborn, unfounded litigiousness." *Sparks v. Mountain Breeze Restaurant*, 55 N.C. App. 663, 665, 286 S.E.2d 575, 576 (1982). Further, the decision to award attorney fees rests within the discretion of the Commission and as such will not be disturbed on appeal in the absence of a showing of abuse of discretion. *Taylor v. J.P. Stevens Co.*, 307 N.C. 392, 394, 298 S.E.2d 681, 683 (1983). After careful review of the evidence in this case, we cannot say that the Commission abused its discretion in failing to award plaintiff attorney fees.

## III.

[2] Plaintiff also assigns as error the Commission's failure to include the amount paid by the State for Kirk's health insurance in the calculation of plaintiff's average weekly wage.

The controlling statute, N.C. Gen. Stat. § 97-2(5), lists five methods for computing average weekly wages. The relevant statutory provisions provide:

[2] Where the employment prior to the injury extended over a period of less than 52 weeks, the method of dividing the earnings

KIRK v. STATE OF N.C. DEPT. OF CORRECTION

[121 N.C. App. 129 (1995)]

during that period by the number of weeks and parts thereof during which the employee earned wages shall be followed; provided, results fair and just to both parties will be thereby obtained.

. . .

[4] But where for exceptional reasons the foregoing would be unfair, either to the employer or employee, such other method of computing average weekly wages may be resorted to as will most nearly approximate the amount which the injured employee would be earning were it not for the injury.

N.C. Gen. Stat. § 97-2(5) (1994).

Plaintiff contends that the Commission erred by calculating Kirk's average weekly wages according to the second method and argues that the fourth provision under the statute should have been used because it is unfair to the employee not to include the employer's contributions to his health benefit in the calculation of his average weekly wages.

Where the language of the statute is clear, this Court must interpret the statute according to the plain meaning of its terms and "may not interpolate or superimpose provisions and limitations not contained therein." *Preston v. Thompson*, 53 N.C. App. 290, 292, 280 S.E.2d 780, 783, *disc. review denied*, 304 N.C. 392, 285 S.E.2d 833 (1981).

Here the statute provides that this fourth method should only be used "where for exceptional reasons the foregoing would be unfair." Accordingly, this means that method four should not be used unless the result under method two would be unjust.

This is in accord with the interpretation given by this Court in *Wallace v. Music Shop*, 11 N.C. App. 328, 181 S.E.2d 237 (1971). In *Wallace*, we stated "the fourth prescribed method may not be used unless there has been a finding that use of the second method would produce results unfair and unjust to either the employee or employer." *Id.* at 331, 181 S.E.2d at 239 (citation omitted).

The U.S. Supreme Court held that the employer's contribution to the employee's health and welfare pensions should not be included as part of the employee's wages for the purpose of calculating benefits under the Longshoremen's and Harbor Workers' Compensation Act. *Morrison-Knudson Construction Co. v. U.S. Dep't of Labor*, 461 U.S.

624, 103 S.Ct. 2045, 76 L.Ed.2d 194 (1983). The Court reasoned that wage means "the money rate at which service is recompensed under the contract of hiring" and not "fringe benefits that cannot be converted into a cash equivalent." *Id.*; *See 2 Larson Workmen's compensation Law*, § 60.12(b) (1995).

The same reasoning applies in the present case. We can find no case law in this State to support plaintiff's position that an unfair result is reached by not including the employer's contribution to Kirk's health care. A State employee receives the benefits of the State Health Plan only when needed. The value of this benefit cannot be quantified. After carefully considering the evidence, we cannot say that the Commission's failure to include such allowance produced an unfair result for the plaintiff. Thus, absent a finding that method two produces an unfair result, the Commission did not err by excluding the State's contributions to Kirk's Health Plan in the calculation of Kirk's average weekly wages.

Next, plaintiff argues that the employer's contribution to Kirk's health insurance should be included in the calculation of weekly earnings because of the following provision in N.C. Gen. Stat. § 97-2(5), which provides:

> Whenever allowances of any character made to an employee **in lieu of wages** are specified part of the wage contract they shall be deemed a part of his earnings.

N.C. Gen. Stat. § 97-2(5) (1994) (emphasis added).

Here, there is no evidence that the State's contributions to Kirk's health insurance were made "in lieu of wages." State employees are hired to perform a specific job at a specific pay grade which is inclusive of all wages the employee is entitled to receive. There is nothing in the conditions of employment that permits a State employee to refuse this allowance and receive wages in its place. Therefore, contributions by the State to insure an employee under a health plan is not an allowance made "in lieu of wages" within the meaning of this statute. Accordingly, we find no error in the Commission's refusal to consider this allowance as part of Kirk's average weekly wages.

Affirmed.

Judges LEWIS and MARTIN, MARK D. concur.